**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>     **Plaintiff,** )<br>)<br>v. )<br>)<br>DARRYL LAMONT ANDERSON, )<br>JR., )<br>)<br>)<br>     **Defendant.** ) | NO. 5:25-CR-00132-GFVT-MAS |

**MEMORANDUM OPINION & ORDER**

Defendant Darryl Lamont Anderson, Jr. ("Anderson") came before the undersigned for an initial appearance on November 19, 2025. [DE 6]. The United States moved to detain Anderson, and the Court conducted a detention hearing. Considering the record—including testimony, proffer, the Pretrial Services Report ("PSR"), and arguments—the Court finds that Anderson must be detained in accordance with the Bail Reform Act ("BRA") and shall grant the United States' motion for detention.

     **I.    ANALYSIS**

Anderson is charged with knowingly and intentionally distributing a mixture or substance containing a detectable amount of fentanyl, which resulted in an overdose death, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). [DE 1]. At the initial appearance, the United States orally moved for pretrial detention pursuant to

18 U.S.C. § 3142(f)(1)(B) and (C). [DE 6]. The Court conducted a detention hearing on December 1, 2025.

A.     **LEGAL STANDARD FOR DETENTION UNDER THE BAIL REFORM ACT**

The Court afforded both sides all procedural rights outlined in the Bail Reform Act. Given the nature of the charges, a detention presumption arises under the BRA as to both the nonappearance and danger risks. 18 U.S.C. § 3142(e)(3)(A). The presumption imposes upon the defendant a "burden of production" to introduce "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). This burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* An unrebutted presumption requires detention. Even if the defendant fails to rebut the presumption, the presumption remains a factor in determining detention. *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

If a defendant rebuts the presumption of detention, the burden shifts back to the United States to prove that detention is nevertheless warranted. Detention premised on nonappearance must rest on facts supported by a preponderance of the evidence. *See, e.g., United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006). Detention based on danger, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure the safety of the community. 18 U.S.C. § 3142(f). Further, almost any conditional release ultimately

depends on a court's assessment of a defendant's good faith intentions and predicted compliance with any imposed conditions. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as a critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). However, the nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.

**B.    ANDERSON'S DANGER TO THE COMMUNITY**

To begin, the Court finds that Anderson overcame the presumption as to his risk of danger to the community. Relying predominantly on the PSR, defense counsel proffered that Anderson has strong community and family ties, has not committed any crimes since 2023, and has a relatively minimal criminal history consisting of only one other state conviction, which is related to the instant matter. Also, Anderson argues that, if he is released, he will begin living with his aunt and mother. He claims that this change of scenery from his previous living situation will necessitate strict compliance with any court-imposed conditions and mitigate the risk of danger posed by his release. The Court finds that these considerations are sufficient to meet Anderson's low production burden, overcoming the detention presumption as to danger. *See Stone*, 608 F.3d at 945; *see also United States v. Hernandez*, No. 1:02-

CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring "probative, credible evidence to rebut the presumption"). However, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d Cir. 1986)).

In analyzing Anderson's potential for danger to the community, the Court considers his history and characteristics, the nature and circumstances of the offense charged, the weight of the evidence against Anderson, and the nature and seriousness of the danger to any person or the community that would be posed by Anderson's release. *See* 18 U.S.C. § 3142(g). Although Anderson overcame the initial presumption of detention, the United States has proven by clear and convincing evidence that he poses a danger to the community under the BRA framework.

1. **Anderson's History and Characteristics**

The Court must consider many aspects of Anderson's background in making the decision to release or detain him. Specifically, the BRA requires courts to "take into account the available information concerning— [ . . . ] the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation[.]" 18 U.S.C. § 3142(g)(3).

Anderson has spent most of his life living with his father in Louisville, Kentucky. [PSR at 1–2]. He reports a strong relationship with both parents, who both reside in Louisville, Kentucky. Anderson has two maternal siblings and three biological minor children, which currently reside with their mother in Lexington, Kentucky. [PSR at 2]. Prior to his arrest, Anderson was residing with his father in Louisville; however, if released, Anderson would live with his mother and aunt.

Anderson is 26 years old. He reports attending various schools within the Jefferson County Public School system until ninth grade. He has not obtained his General Education Development Diploma. [PSR at 2]. Anderson reported a history of night terrors, PTSD, bipolar disorder, and anxiety, for which he previously received treatment. [PSR at 3]. He reported daily use of cannabinoids and prescription opiates.

Although Anderson's criminal history is *de minimis*, the criminal history that does exist is relatively concerning. In 2022, he was indicted in Fayette County Circuit Court for trafficking in a controlled substance, trafficking in marijuana, and an unlawful transaction with a minor. [PSR at 4]. All charges were later dismissed. However, while those charges were pending, Anderson was convicted in the same court for trafficking fentanyl and marijuana, and possession of drug paraphernalia in relation to the instant conduct. [PSR at 4]. Committing and being convicted of serious criminal conduct under the BRA tilts the analysis heavily against Anderson. *See* 18 U.S.C. § 3142(g)(3)(A).

Anderson's criminal history, while brief, is replete with instances of noncompliance. While on pretrial release in the related state case, Anderson violated conditions of supervised release on multiple occasions. Namely, Anderson tested positive for marijuana on May 28, 2024, and June 4, 2024. He failed to report for a drug test on June 12, 2024. After pretrial services submitted a second violation report for the failure to show for the June 12 drug test, Anderson continued to fail to show for drug testing on July 1, July 8, and July 16, 2024. A bench warrant was issued for these violations (later recalled). Additionally, following his state conviction, Anderson admitted to using marijuana on October 1, 2025, in violation of his terms of probation. [PSR at 4–5]. Perhaps most importantly, the conduct underpinning the Indictment in this case occurred while Anderson was on pretrial release for the 2022 state drug trafficking case.

The fact remains that, if convicted, Anderson faces an incredibly long sentence. He has a substantial history of substance use disorder. Further, in the two years since his release on the related state charges, Anderson has not acquired substantial employment. Instead, Anderson worked at UPS for one week but was terminated after a "no-call-no-show." Moreover, although Anderson clearly has strong familial bonds and ties to the community and a relatively minor criminal history, these facts cannot overcome his history of noncompliance and failure to abide by court-imposed release conditions. These release violations underscore a general disregard for authority and the restraints typically imposed to prevent harm to the community—a

chief concern for the Court under a BRA analysis. Accordingly, this factor supports danger-based detention.

    **2.**    **The Nature and Circumstances of the Offense Charged**

The next BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The allegations here are serious. At the detention hearing, the United States offered proffer and proof of Anderson's alleged criminal conduct, mostly through the testimony of Detective Brandon Hazlewood ("Hazlewood") of the Lexington Police Department Narcotics Enforcement Unit.

According to Hazlewood, on January 7, 2023, law enforcement officers responded to a call about a potential drug overdose on Eureka Springs Drive. Upon arrival, law enforcement officers found the twenty-year-old victim, M.M., deceased. Toxicological investigations of the victim's blood found marijuana and 5.1 nanograms of fentanyl, including evidence of 4-anilino-N-phenethylpiperidine (4-ANPP), a metabolite of illicit fentanyl. The cause of death was fentanyl toxicity. Additional investigation of M.M.'s residence revealed a white box and glass vial, each with suspected fentanyl residue inside, a cut straw, and a torn plastic bag with a blue pill inside, suspected to be a pressed fentanyl pill. Lab reports revealed that the blue pill contained fentanyl, and the cut straw contained fentanyl residue.

A search of M.M.'s phone revealed texts between M.M. and a contact named "D.J.," additional investigation revealed that D.J.'s phone number was registered to Darryl Anderson, Sr. Text messages described the quantity of narcotics for purchase on January 6, 2025: an ounce of marijuana and three thirty-milligram Percocet pills

for $240. The messages indicate that M.M. and D.J. met at 10:43 p.m. on January 6, 2025, to complete the transaction.

M.M.'s girlfriend, Summer Roe, also reported that M.M. purchased the substances from an individual called "D.J." Roe described being present for historic transactions, which were conducted in a parking lot of an apartment complex on Locust Point Way. Using a police database, officers retrieved a photo of Anderson and presented it to Roe, who confirmed his identity as "D.J."

Two days later, Hazlewood used M.M.'s phone to contact Anderson and ordered one ounce of marijuana and three thirty-milligram Percocet pills. Hazlewood proceeded to meet Anderson the following day to conduct the transaction. Anderson arrived with only thirty-four grams of marijuana—he claimed that his supply source was on his way with the pills. When executing a search warrant of Anderson's apartment, officers collected eight pounds of marijuana, over $2,000 in cash, and other drug paraphernalia (digital scales and plastic bags). Additionally, officers found the phone used to communicate with M.M.

After he was given *Miranda* warnings, Anderson admitted selling the pills to M.M. on January 6, 2023. He further advised that he purchased the pills for $10 each from his supplier and sold them to M.M. for $20. Upon his later arrest on the Indictment in this case, Anderson made numerous statements of guilt to officers and, in a custodial phone call, mentioned that he would have to live with the death of "ole boy."

Both the nature of the offense—a presumption drug trafficking case—and the circumstances surrounding it—the death of M.M.—heavily favor Anderson's detention. The BRA manifestly signals Congress's belief in the inherent, exceptional dangerousness of the at-issue offense. And as previously discussed, the detention presumption stemming from it "does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *Lattner*, 23 F. App'x at 364 (quoting *Martir*, F.2d at 1144). Drug trafficking is, in and of itself, an offense that poses a serious danger to the community. *Stone*, 608 F.3d at 955 n.6. Thus, the presumption persists as a pro-detention consideration and, overall, this factor firmly favors detention.

### 3. The Weight of the Evidence of Dangerousness

In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(g). "[T]he § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *United States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citing *Stone*, 608 F.3d at 948).

This factor is somewhat duplicative of § 3142(g)(1) and (3) because, in considering a defendant's overall dangerousness, the Court must consider the facts of the crime alleged as well as evidence that the defendant has been dangerous in the past, such as criminal history and a history of violent behavior. The United States' proffer constitutes very serious allegations that Anderson distributed an incredibly dangerous controlled substance, which caused the most unfortunate result—death.

Because the risk of continued trafficking falls squarely within the BRA's dangerousness consideration, these facts heavily favor a danger-based detention. *See United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (mentioning that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated").

### 4. The Nature and Seriousness of Danger Posed by Release

For the fourth and final factor under the BRA, the Court must weigh "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In cases involving drug trafficking, courts have repeatedly recognized the grave threat such conduct poses to the community. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (noting that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

Here, the lethality of the controlled substances involved and the outcome of the conduct underpinning the Indictment, significantly exacerbates the risk of harm associated with Anderson's alleged conduct. *See Holden*, 2017 WL 1362684, at *2 (stating that the dangers of drug trafficking "leading to near fatal overdoses cannot be overstated"). Additionally, not only was Anderson on state pretrial release related to a drug trafficking charge when the current offense occurred, but the evidence of his involvement in the distribution of fentanyl is substantial. Furthermore, his

continued use of controlled substances while on state supervised release demonstrates an ability to obtain such substances even when submitted to home incarceration with electronic monitoring.

Anderson contends that the United States cannot establish by clear and convincing evidence that he poses a danger to the community. He contends that he is not a consistent "large-scale" drug trafficker and, as such, there is less risk associated with release.[1] He further argues that he has attempted to "lay low" since the Indictment, which he claims is why he has failed to attain substantial employment over the last two years. The Court finds the argument that Anderson was "laying low" unpersuasive, particularly in light of the multiple violations of release conditions in his state case. Furthermore, Anderson's possible identity as a "small-scale" drug trafficker does not negate the seriousness of his history of distributing fills containing fentanyl, one of which resulted in an overdose death. In any case, Anderson's arguments do not mitigate the specter of danger raised by the allegations at issue here, particularly when viewed in conjunction with his consistent history of noncompliance.

In sum, the BRA factors overwhelmingly support a finding that Anderson presents a substantial danger to the community and strongly favor detention. Although the idea of Anderson residing with his mother and aunt and thus being

---

[1] Specifically, Anderson points to evidence that he did not have three thirty-milligram Percocet pills available for purchase by Hazlewood following M.M.'s death. Anderson claims that he only sold opiate pills to M.M. by request and did not do any other business involving the sale of such pills.

constantly under the supervision of one of the two is persuasive, it does not fully alleviate the Court's concerns. This is especially true when the Court considers that Anderson committed the instant offense while on pretrial release in a state case, which is indicative of his ability to conduct criminal enterprise while under supervision. In sum, Anderson's history of noncompliance with court-imposed conditions requires the conclusion that no condition or combination of conditions will reasonably assure the safety of the community and danger-based detention is required under the BRA.

C. **ANDERSON'S RISK OF NONAPPEARANCE**

The United States did not make substantial arguments regarding Anderson's risk of nonappearance beyond his lack of employment and potential for a long sentence if convicted. Thus, the government did not meet the preponderance burden to detain Anderson based on a risk of nonappearance and nonappearance-based detention is not proper under the BRA.

## II.   CONCLUSION

For the above-stated reasons, the Court finds the United States failed to prove by a preponderance of the evidence that Anderson poses a risk of nonappearance but proved by clear and convincing evidence that Anderson is an irremediable danger to the community and the Bail Reform Act mandates detention.

The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Anderson will not pose a danger to another or the community. Accordingly, the Court

**GRANTS** the United States' oral motion for detention and **DETAINS** Defendant Anderson.

Signed this the 10th of December, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY